## CUNNINGHAM v. McDERMETT.*
(No. 1809.)

(Court of Civil Appeals of Texas. El Paso.
Oct. 22, 1925. Rehearing Denied
Nov. 12, 1925.)

1. Elections ⬅121(1)—Political parties are political instrumentalities, and are in no sense governmental instrumentalities.

Political parties are political instrumentalities, and are in no sense governmental instrumentalities.

2. Elections ⬅159—Defeated primary candidate may be legally elected at general election by voters writing his name on ballot.

Candidate defeated in primary election may be legally elected at general election by his name being written on the ballot, notwithstanding that under Rev. St. art. 3166, he was disqualified from having name placed on official ballot, in view of Vernon's Ann. Civ. St. Supp. 1922, art. 3082.

3. Elections ⬅159—Voters who voted in primary election, and later at general election scratched name of party candidate and voted for defeated primary candidate, held "qualified voters."

Voters who voted in primary election, and later at general election scratched name of primary candidate and voted for defeated primary candidate, held qualified voters, under Const. art. 1, §§ 1, 2, and article 6, §§ 1, 2, despite violation of primary pledge, under Rev. St. art. 3096.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Qualified Voters.]

Appeal from District Court, Reagan County; C. R. Sutton, Judge.

Election contest by E. I. Cunningham against W. E. McDermett. From a judgment for defendant, plaintiff appeals. Affirmed.

Hill, Neill & Hill, of San Angelo, and E. F. Vanderbilt, of Big Lake, for appellant.

W. C. Blanks and Upton & Upton, all of San Angelo, and J. A. Moore, of Big Lake, for appellee.

PELPHREY, C. J. This is a case arising out of a contested election for the office of county and district clerk of Reagan county, Tex.

The following facts were agreed to by the parties: E. I. Cunningham and W. E. McDermett were both candidates for the nomination to said office before the Democratic primary held in Reagan county in July, 1924. Cunningham was successful, and McDermett filed a contest before the county Democratic executive committee, which he later abandoned. Cunningham's name appeared on the ballot at the general election as the Democratic nominee. At the general election McDermett and 25 others who had participated in the Democratic primary scratched Cunningham's name and wrote in the name of McDermett. Only 175 votes were cast in the general election. Seventy-eight of these votes were cast for Cunningham, and 97 were cast for McDermett, giving McDermett a majority of 19 votes. Had McDermett and the 25 others, who had voted in the Democratic primary, either voted for Cunningham or refrained from voting, Cunningham would have received a majority. McDermett was declared elected and received a certificate of election. Cunningham gave due notice and filed a contest in the district court of Reagan county, and, upon hearing, the judgment of the court was rendered in favor of McDermett.

Appellant contends that the Legislature, by prescribing how party primaries must be conducted, turned the party into a governmental agency, and that a candidate of a primary, being the candidate of the governmental agency, should be protected from the machinations of evilly disposed persons.

[1] With this proposition we cannot agree, but consider them as they were held to be by our Supreme Court in the case of Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253, in which Chief Justice Phillips said: "Political parties are political instrumentalities. They are in no sense governmental instrumentalities." We find the Supreme Court in Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880, adopting this classification.

[2] Appellant claims that on account of the provisions of article 3166, R. S. McDermett would have been disqualified from having his name placed on the official ballot as the candidate of any party or as an independent or nonpartisan candidate, and with his position in this matter we must agree (Westerman v. Mims, 111 Tex. 29, 227 S. W. 178); yet, we think there is a material difference between a person's right to have his name placed upon the official ballot and his right to an office to which a majority of the voters have seen fit to elect him by writing his name on the ballot.

It cannot be said that because a candidate's name did not appear on the official ballot that therefore he could not be legally elected, if he was otherwise not ineligible to hold the office to which he aspired, for to so hold would be, in effect, to say that a citizen of this state who aspired to office must either help pay the expenses of some party primary or must, within 30 days after primary election day, deliver to the secretary of state an application signed by the required percentage of qualified voters in his district who had not participated in any party primary.

The Constitution has laid down rules in regard to the ineligibility of persons to hold office, and the Legislature, in article 3082,

Vernon's Ann. Civ. St. Supp. 1922, has provided that all persons are ineligible to any state, county, precinct, or municipal office in the state unless they are eligible to hold office under the Constitution, and though conviction of high crimes makes a person ineligible, according to the Constitution, we find nowhere any law which disqualifies a person from holding office on account of the breach of a purely moral obligation such as the primary pledge has been held to be by our Supreme Court in Westerman v. Mims, supra. Therefore, we must disagree with appellant on his proposition that, because McDermett had theretofore participated in the Democratic primary, and had filed a contest before the county Democratic executive committee, he was legally disqualified to be elected to the office of county and district clerk.

Appellant also contends that the 25 votes cast by McDermett's friends, who had voted in the primary, were illegal and fraudulent, because in so casting their votes for McDermett and against Cunningham they violated the primary pledge to support Cunningham, the Democratic nominee, and that they should not be counted.

The first declaration found in our Bill of Rights, reads as follows:

"That the general, great and essential principles of liberty and free government may be recognized and established, we declare," etc.

And then in section 2 of article 1 we find this language:

"All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit," etc.

We find again in article 6, § 1, that certain classes of persons shall not be allowed to vote, namely: First, persons under 21 years of age. Second, idiots and lunatics. Third, all paupers supported by any county. Fourth, all persons convicted of any felony, subject to such exceptions as the Legislature may make. Fifth, all soldiers, marines, and seamen, employed in the service of the army or navy of the United States.

Section 2 of the same article provides that—

"Every male person subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years, and who shall be a citizen of the United States, and who shall have resided in this state one year next preceding an election, and the last six months within the district or county in which he offers to vote, shall be deemed a qualified elector," etc.

[3] We are of the opinion that the 25 voters aforesaid came within the qualifications specified in the Constitution, and that, they being qualified voters, ballots cast by them would be legal ballots and should be counted unless they were mutilated to such an extent as to render their being counted impossible, or otherwise failed to conform to the requirements of the statutes.

If there is anything in the declarations in our Constitution that "all political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit," and there should be none who would gainsay it, how could any court, which has any respect for established law and order, nullify the will of the people of a subdivision of this state as expressed by their votes; and we are of the opinion that for this, or any other court, to hold that the will of the majority as to the selection of their officers should be set aside and held for naught would be violating both the spirit and the letter of our Constitution.

Believing that the Legislature, in enacting article 3096, merely intended it to carry out a practice which had been in vogue by political parties of requiring a test in party primaries, and that they had no intention of attempting to limit the right of suffrage in general elections, we hold that the judgment rendered by the trial court was correct.

The judgment is affirmed.

On Rehearing and Motion to Certify.

Appellant suggests that our opinion does not fully state the facts so as to fairly state his case, and refers specially to stipulations Nos. 29 and 31 of the agreed facts. In compliance with his request we will quote them.

The twenty-ninth stipulation reads as follows:

"Twenty-five voters who had voted in the Democratic primary election for W. E. McDermett for county and district clerk voted in the general election for W. E. McDermett."

The thirty-first stipulation reads as follows:

"W. E. McDermett made no public announcement of the fact that he was a candidate for the office of county and district clerk at the general election to be held on November 4, 1924."

The motion to certify is overruled, for the reason that, in our opinion, the disposition of this appeal by this court is entirely correct, is not in conflict with the decisions of the Supreme Court, and the questions presented call for no certification to the Supreme Court.

The motion for rehearing and to certify is overruled.