### NIXON v. CONDON et al.

District Court, W. D. Texas, El Paso Division.
July 31, 1929.

No. 1379.

Knollenberg & Cameron, of El Paso, Tex., and Louis Marshall, of New York City, for plaintiff.

Ben R. Howell, of El Paso, Tex., for defendants.

BOYNTON, District Judge. Plaintiff brings suit herein, in its nature an action at law for recovery of damages, against defendants, for their refusing, as judges at a Democratic primary election, to permit plaintiff, a negro, to vote at such Democratic primary election in the state of Texas, alleging that plaintiff was, by such action of defendants as judges of such primary election, deprived of rights to which plaintiff alleges he is entitled as a citizen of the United States, under the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and under and by virtue of statutes and laws of the United States, viz.: Section 31, title 8, USCA (Rev. St. § 2004), and section 43, title 8, USCA (Rev. St. § 1979), as warranting maintaining of this action, and jurisdiction of same as vested in the United States District Court under subsections 11 (Rev. St. § 629, par. 12; Act March 3, 1911, c. 231, § 24, par. 11), 12 (Rev. St. § 563, par. 11, and section 629, par. 17; Act March 3, 1911, c. 231, § 24, par. 12), and 14 (Rev. St. § 563, par. 12, and section 629, par. 16; Act March 3, 1911, c. 231, § 24, par. 14) of section 41, title 28, USCA.

The petition alleges that plaintiff is a negro, a citizen of the United States and of the state of Texas, and a resident of El Paso, El Paso county, Texas, and in every way qualified to vote, as set forth in detail in his petition herein; that on July 28, 1928, a Democratic primary election was held at El Paso, and throughout the state of Texas, on said date, for the nomination of candidates for a Senator and Representatives in Congress, and state and other officers upon the Democratic ticket; that the plaintiff, being a member of the Democratic party, sought to vote, and presented himself at time and place specified, and asked for a ballot and requested the privilege to vote at such primary election, but was refused a ballot and denied by defendants the right to vote at such primary election, defendants acting as election judges at holding of such Democratic primary election, held in the election precinct of which plaintiff was a resident in the city of El Paso, El Paso county, Texas; that such denial by defendants to permit plaintiff to vote at such Democratic primary election was based on

and in accordance with instructions of the chairman of the Democratic county executive committee of El Paso county, Texas, in turn based on and in accordance with resolution passed by the state Democratic executive committee of Texas, prior to July 28, 1928, to wit:

"Resolved, that all white Democrats who are qualified and under the Constitution and laws of Texas and who subscribe to the statutory pledge provided in article 3110, Revised Civil Statutes of Texas, and none other, be allowed to participate in the primary elections to be held July 28, 1928, and August 25, 1928, and further, that the chairman and secretary of the State Democratic executive committee be directed to forward to each Democratic county chairman in Texas a copy of this resolution for observance."

Plaintiff alleging the aforesaid resolution was adopted by the state Democratic executive committee of Texas under authority of an act of the Legislature of the state of Texas, approved June 7, 1927, at first called session of the Fortieth Legislature, which is designated as article 3107, and being chapter 67 of Laws of 1927, and being as follows:

"Article 3107. Every political party in this state through its state executive committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party: Provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or non-membership in organizations other than the political party." Section 1 (re-enacting Rev. St. 1925, art. 3107).

And plaintiff further alleging that such act of the Legislature of the state of Texas aforesaid, and resolution of the state executive committee of Texas aforesaid, instructions of the chairman of the Democratic county executive committee of El Paso county, Texas, and action of defendants as election judges at such Democratic primary election, are contrary to and in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and statutes and laws of the United States hereinbefore recited; and plaintiff brings this action herein for the recovery of damages to redress an injury which he alleges he sustained by reason of the acts of defendants in their official capacities, as election judges at such Democratic primary election, discriminating against him by reason of his race and color, in violation of the Constitution, statutes, and laws of the United States.

Defendants have filed, and present to the court, motion to dismiss, urging as grounds for dismissal, together with other grounds deemed immaterial, and unnecessary to be considered and passed upon by the court, the following: That the matters and allegations in plaintiff's petition are not sufficient to constitute a cause of action against defendants or either of them; that the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and statutes enacted by the Congress of the United States pursuant thereto, do not appear to have been violated from the allegations in said petition; that the primary election held on the 26th day of July, A. D. 1928, in the state of Texas and county of El Paso, was not an election within the meaning of the Constitution of the United States, or any laws pursuant thereto, or the Fourteenth and Fifteenth Amendments to the Constitution of the United States, but that plaintiff's petition shows that such primary election constituted merely a nomination for an election, and that no deprivation of any right to vote at an election is alleged in said petition; that the provisions of the act of the Texas Legislature, as fully set forth in plaintiff's petition, are in all respects valid and not in conflict with the Constitution of the United States or any amendment thereto, nor in conflict with any of the statutes of the United States enacted in pursuance of such Constitution or amendments; that the Constitution of the state of Texas and laws of the state of Texas do not, from the allegations in plaintiff's petition contained, appear to have been violated; that, irrespective of any statutory authority, the state executive committee of a political party has authority to determine who shall comprise its membership, and in this instance the state executive committee of the Democratic party of the state of Texas has excluded the plaintiff from membership in such political party, and that this exclusion did not violate any portion of the Constitution of the United States, or of the statutes enacted by the Congress of the United States.

By the Thirteenth Amendment to the Constitution, slavery and involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, was abolished, prohibited to exist within the United States, or any place subject to their jurisdiction, and Congress vested with power to enforce the provisions of such amendment by appropriate legislation.

The Fourteenth Amendment provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. * * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor shall any state deprive any person of life, liberty, or property, without due process of law; * * * nor deny to any person within its jurisdiction the equal protection of the laws."

The Fourteenth Amendment, by effect of wording thereof, thus including and declaring as citizens of the United States all members of the negro race, including those who prior to such amendment have been held in slavery in various States of the Union.

The Fifteenth Amendment, which in express terms alone relates to the subject of suffrage, the right to vote, provides as follows: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude," and further that Congress shall have power to enforce said amendment by appropriate legislation.

Thus by the Thirteenth Amendment slavery was abolished; by effect of the Fourteenth Amendment negroes were made, included, and declared citizens of the United States and of the states wherein they reside; and by the Fifteenth Amendment it was provided that the right of citizens of the United States, all citizens, to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude; and Congress given power to enforce the provisions of said amendments by appropriate legislation. These three amendments, being known and designated as the "Civil War Amendments," were passed and ratified in the years 1865, 1868, and 1870, respectively, and, though applying to all citizens alike, passage and adoption of same was prompted and deemed necessary for protection of the civil and political rights of those of the African race and their descendants, negroes, who had just been freed from slavery. Those sections of the statutes of the United States, viz. section 31, title 8, USCA, and section 43, title 8, USCA, relied upon by plaintiff as authorizing maintaining of his action herein, were passed by Congress on May 31, 1870, and April 20, 1871, respectively.

The Fourteenth and Fifteenth Amendments are each expressly and exclusively directed against action by any state, prohibiting and restraining any state from enacting any law, or action by any state, or action under color of law of such state, depriving any citizen of the United States of any

civil right guaranteed by the Fourteenth Amendment, and a political right, the right to vote, exercise of the elective franchise, guaranteed by the Fifteenth Amendment, respectively, as held by an unbroken line of decisions of the Supreme Court of the United States. It is also held by said decisions that there is no violation of either the Fourteenth or Fifteenth Amendments to the Constitution of the United States, unless the wrong complained of be based on some action by a state of the United States, by enactment as a governmental body, as a legislative body, of a law, or action by some official or governmental agency acting for the state, in the name of the state, or under color of a law, in distinction from that of private individuals; that if the wrong complained of be not that of the state, or of some official or governmental agency acting for and in name of the state, but be the action of some private individual or individuals, no action lies that can be maintained under said amendments, respectively, and statutes of the United States above cited. Slaughterhouse Cases, 16 Wall. (83 U. S.) 36, 21 L. Ed. 394; United States v. Reese et al., 92 U. S. 214, 218, 23 L. Ed. 563; United States v. Cruikshank et al., 92 U. S. 542, 23 L. Ed. 588; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Virginia v. Rives, 100 U. S. 318, 25 L. Ed. 667; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; United States v. Harris, 106 U. S. 629, 640, 641, 1 S. Ct. 601, 27 L. Ed. 290; Civil Rights Cases, 109 U. S. 3, 3 S. Ct. 18, 27 L. Ed. 835; Ex parte Yarbrough, 110 U. S. 651, 664, 4 S. Ct. 152, 28 L. Ed. 274; Yick Wo v. Hopkins, 118 U. S. 356, 365, 370, 373, 6 S. Ct. 1064, 30 L. Ed. 220; In re Kemmler, 136 U. S. 436, 438, 448, 10 S. Ct. 930, 34 L. Ed. 519; McPherson v. Blacker, 146 U. S. 1, 23–25, 13 S. Ct. 3, 36 L. Ed. 869; Gibson v. Mississippi, 162 U. S. 565, 579, 16 S. Ct. 904, 40 L. Ed. 1075; Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; Wiley v. Sinkler, 179 U. S. 58, 65, 21 S. Ct. 17, 45 L. Ed. 84; Swafford v. Templeton, 185 U. S. 487, 491, 22 S. Ct. 783, 46 L. Ed. 1005; Giles v. Harris, 189 U. S. 475, 485, 23 S. Ct. 639, 47 L. Ed. 909; James v. Bowman, 190 U. S. 127, 136, 23 S. Ct. 678, 47 L. Ed. 979; Hodges v. United States, 203 U. S. 1, 15, 19, 27 S. Ct. 6, 51 L. Ed. 65; Guinn v. United States, 238 U. S. 347, 354, 35 S. Ct. 926, 59 L. Ed. 1340, L. R. A. 1916A, 1124; Myers v. Anderson, 238 U. S. 369, 35 S. Ct. 932, 59 L. Ed. 1349; United States v. Mosley, 238 U. S. 383, 35 S. Ct. 904, 59 L. Ed. 1355;

Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201; Love et al. v. Griffith et al., 266 U. S. 33, 45 S. Ct. 12, 69 L. Ed. 157; Corrigan v. Buckley, 271 U. S. 323, 330, 46 S. Ct. 521, 70 L. Ed. 969; Nixon v. Herndon, 273 U. S. 536, 540, 47 S. Ct. 446, 71 L. Ed. 759; Grigsby v. Harris (D. C. S. D. Tex.) 27 F.(2d) 942.

Plaintiff's petition alleges that in 1923 (Acts 38th Leg., 2d Called Session, c. 32) the Legislature of Texas passed an act (article 3093a) which read as follows: "Article 3093a. All qualified voters under the laws and Constitution of the state of Texas who are bona fide members of the Democratic party, shall be eligible to participate in any Democratic party primary election, provided such voter complies with all laws and rules governing party primary elections; however, in no event shall a negro be eligible to participate in a Democratic party primary election held in the state of Texas, and should a negro vote in a Democratic primary election, such ballot shall be void and election officials are herein directed to throw out such ballot and not count the same." And that the Supreme Court of the United States, in case of Nixon v. Herndon, opinion by Justice Holmes (March 7, 1927), 273 U. S. 536, 539–541, 47 S. Ct. 446, 71 L. Ed. 759, held said act unconstitutional, as an act, a law, enacted by the Legislature of Texas, that in its language, and express provisions, was in direct violation, as held by the court, of the Fourteenth Amendment to the Constitution of the United States, in that such act was clearly an enactment by the State Legislature of the state of Texas of a law depriving a citizen of the United States, because of race or color, of a civil right or rights guaranteed him by the Fourteenth Amendment, as a citizen of the United States, and therefore plaintiff in said case was entitled to maintain his action therein, one for recovery of damages, because same was based upon action taken by defendants, in denying plaintiff the right to vote at a Democratic primary election, under and by virtue of an unconstitutional and void act or law enacted by a state, the state of Texas, viz. the enactment of said article 3093a, aforesaid, so held to be unconstitutional by the Supreme Court of the United States in said case of Nixon v. Herndon, supra; the Supreme Court citing as in support of its opinion in said case Wiley v. Sinkler, supra, and Giles v. Harris, supra.

Plaintiff further alleges in his petition herein that, following such decision of the Supreme Court of the United States in Nixon

v. Herndon, supra, the Legislature of Texas by the act approved June 7, 1927, specially repealed said article 3093a and enacted article 3107, being chapter 67 of the Laws of Texas of 1927, 1st Called Session, in this opinion hereinbefore recited, and contends that said act (article 3107) is unconstitutional, in that it is sought and intended thereby to delegate to the state executive committees of political parties in Texas power to exclude colored persons, negroes, from voting at primary elections.

Without undertaking to quote from decisions of the Supreme Court of the United States above cited, holding that action cannot be maintained, unless it be based upon some action of a state, held to be in violation of the Fourteenth or Fifteenth Amendments, it here appears to the court, and the court so finds and holds, that said act of the Legislature of the state of Texas approved June 7, 1927 (art. 3107 of the Revised Statutes of the State of Texas), here in question is not unconstitutional, the enactment by the state of Texas of a law in violation of either the Fourteenth or Fifteenth Amendments to the Constitution of the United States. The wrong here complained of, alleged as basis of plaintiff's action, consists of and arises from the resolution passed by the state Democratic executive committee, prior to July 28, 1928, in this opinion above quoted, and instructions to Democratic county chairmen in Texas as in said resolution recited, and action of defendants as judges at a primary election, in denying and refusing to permit plaintiff to vote at such Democratic primary election held July 28, 1928, as in plaintiff's petition alleged.

The language of the act of the Legislature here complained of (article 3107) shows that in itself there is no vice, as in article 3093a held to be unconstitutional in the case of Nixon v. Herndon, supra; as said article 3107 provides no action by a state, and directed no action be taken upon the part of any person or individuals, that is prohibited by either the Fourteenth or Fifteenth Amendments, under decisions of the Supreme Court of the United States above cited. Said action by the state Democratic executive committee, by passage of the resolution above cited, here in question, and by defendants in denying and refusing to permit plaintiff to vote at such Democratic primary election, is not shown to be the act of the state of Texas, but to be that taken by private individuals; and it is therefore held plaintiff is not warranted to maintain action as in his petition alleged, and this court is without jurisdiction over same, the wrong complained of in plaintiff's petition, unless it can be held that defendants, in refusing to permit plaintiff to vote at such primary election, were acting as officials or governmental agencies of the state of Texas, in name of the state.

In each of the cases, Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759, Child Labor Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, Standard Scales Co. v. Farrell, 249 U. S. 577, 39 S. Ct. 380, 63 L. Ed. 780, Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510, Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, and Williams v. Bruffy, 96 U. S. 176, 24 L. Ed. 716, and other cases cited and relied upon by plaintiff herein, examination of the facts disclose that the action complained of was based upon some law enacted by the legislative department of a state, by a municipal corporation, some commission or body corporate, or some person or individual, as an official of the state acting in their official capacity, each being state officers, legally holding official position under the state, or some body corporate of the state as a governmental body, acting as such in the name of the state, and not as private individuals.

The court here holds that the state Democratic executive committee of the state of Texas, at time of the passage of the resolution here complained of, was not a body corporate to which the Legislature of the state of Texas could delegate authority to legislate, and that the members of said committee were not officials of the state of Texas, holding position as officers of the state of Texas, under oath, or drawing compensation from the state, and not acting as a state governmental agency, within the meaning of the law, but only as private individuals holding such position as members of said state executive committee by virtue of action taken upon the part of members of their respective political party; and this is also true as to defendants, they acting only as representatives of such political party, viz. the Democratic party, in connection with the holding of a Democratic primary election for the nomination of candidates on the ticket of the Democratic party to be voted on at the general election, and in refusing to permit plaintiff to vote at such Democratic primary election defendants were not acting for the state of Texas, or as a governmental agency of said state.

The expenses of holding primary elections in the state of Texas, under the laws of Texas undertaking in certain particulars to regulate primary elections, are not paid by the state of Texas, but by the primary election law of Texas (article 3108, Rev. St. 1925, of Texas) it is provided that such expenses of holding primary elections shall be paid by the respective candidates offering themselves for selection as nominees or candidates of their respective political organizations, to be voted on for election by the people, electors, of the state as a whole at a general election.

In the states of Illinois, Virginia and perhaps other states in which laws exist governing the holding of primary elections, the expenses of the holding and conducting of such primary elections in said states are paid out of the funds of the state, which is not the case in Texas, as above noted. It has been held in Illinois, as shown by decisions of the Supreme Court of said state cited by plaintiff's counsel, that the judges and clerks holding and conducting primary election in Illinois, in which an official ballot is used, and members of all political parties are privileged to vote in such primary, for nomination of the candidates to be selected as nominees of their respective parties; the expenses of holding such primary election are paid out of state funds, and the judges and clerks of such primary election of said state draw compensation, and are held to be officials of the state. This appears also to be the case in Virginia; that is to say, the holding of a primary election is paid for by state funds, and held to be a governmental agency, and persons conducting such elections, judges, clerks, etc., held to be officials of the state, they drawing compensation from the state for services rendered, and acting in the name of the state, as recited in recent opinion of United States District Judge D. Lawrence Groner, of the Eastern District of Virginia, rendered in the case of James O. West v. A. C. Bliley et al., 33 F.(2d) 177, and apparently made the basis of such opinion, which opinion has not yet been published in the official reports, in which the court overruled demurrer to plaintiff's declaration holding that action of defendants in said case in excluding the plaintiff, a negro, from voting at a Democratic primary election was an infringement of rights guaranteed to him by the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and showed cause of action maintainable in the United States court under section 43, title 8, USCA (Rev. St. § 1979).

The Supreme Court of the United States said in case of Virginia v. Rives, supra: "The provisions of the Fourteenth Amendment of the Constitution we have quoted all have reference to state action exclusively, and not to any action of private individuals." Again in Ex parte Virginia, supra: "They have reference to actions of the political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws." Such statement of the law by the Supreme Court is quoted with approval in James v. Bowman, supra, and many other decisions of the Supreme Court previously cited in this opinion.

It is here held by the court that by no line of justified reasoning, based on the facts in plaintiff's petition alleged, and provisions of the primary election laws of Texas, can it be held as a matter of law that the members of the state Democratic executive committee, or of any other political party in Texas, or defendants herein acting as election judges at the primary election in question, were officers of the state of Texas, were such at time of acting as such primary election judges, and were acting as officials or agents of the state of Texas, or as a governmental agency of said state, in so refusing to allow plaintiff to vote at such primary election. The court also holds that the members of a voluntary association, such as a political organization, members of the Democratic party in Texas, possess inherent power to prescribe qualifications regulating membership of such organization, or political party. That this is, and was, true without reference to the passage by the Legislature of the state of Texas of said article 3107, and is not affected by the passage of said act, and such inherent power remains and exists just as if said act had never been passed.

The court further holds that a primary election under the laws of the state of Texas is not an "election" within the purview and meaning of the Fifteenth Amendment to the Constitution of the United States, and section 31 of title 8, USCA (Rev. St. U. S. § 2004). Newberry v. United States, 256 U. S. 232, 250, 41 S. Ct. 469, 65 L. Ed. 913; Koy v. Schneider, 110 Tex. 369, 376, 377, 218 S. W. 479, 221 S. W. 880; Waples v. Marrast, 108 Tex. 5, 11, 184 S. W. 180, L. R. A. 1917A,

470

253; Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699; Hammond v. Ashe, 103 Tex. 503, 131 S. W. 539, and Cunningham v. McDermett (Tex. Civ. App. 1925), 277 S. W. 218. In case of Waples v. Marrast, supra, the Supreme Court of Texas, opinion by Chief Justice Phillips, in discussing the primary election laws, says in part:

"A political party is nothing more or less than a body of men associated for the purpose of furnishing and maintaining the prevalence of certain political principles or beliefs in the public policies of the government. As rivals for popular favor they strive at the general elections for the control of the agencies of the government as the means of providing a course for the government in accord with their political principles and the administration of those agencies by their own adherents. * * * But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. * * * They perform no governmental function. They constitute no governmental agency. The purpose of their primary elections is merely to enable them to furnish their nominees as candidates for the popular suffrage. * * * To provide nominees of political parties for the people to vote upon in the general elections is not the business of the State. * * * Political parties are political instrumentalities. They are in no sense governmental instrumentalities."

At the time of the adoption of the Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution of the United States, and enactment by Congress of section 31, title 8, USCA (Rev. St. § 2004), and section 43, title 8, USCA (Rev. St. § 1979), and other acts of Congress to protect the rights guaranteed to citizens under said amendments to the Constitution, primaries, primary elections, were then unknown.

The Supreme Court of the United States, in case of Newberry v. United States, supra, in discussing section 4, art. 1, of the Constitution of the United States, and the Seventeenth Amendment, which directs that Senators be chosen by the people, says:

"Undoubtedly elections within the original intendment of section 4 were those wherein Senators should be chosen by Legislatures and Representatives by voters possessing 'the qualifications requisite for electors of the most numerous branch of the state Legislature.' Article 1, §§ 2 and 3. The Seventeenth Amendment, which directs that Senators be chosen by the people, neither announced nor requires a new meaning of elec-

tion and the word now has the same general significance as it did when the Constitution came into existence—final choice of an officer by the duly qualified electors. Hawke v. Smith, 253 U. S. 221, 40 S. Ct. 495, 64 L. Ed. 871 [10 A. L. R. 1504]. Primaries were then unknown. Moreover, they are in no sense elections for an office, but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors. General provisions touching elections in Constitutions or statutes are not necessarily applicable to primaries—the two things are radically different. And this view has been declared by many state courts. People v. Cavanaugh, 112 Cal. 674, 44 P. 1057; State v. Erickson, 119 Minn. 152, 137 N. W. 385; State v. Taylor, 220 Mo. 618, 119 S. W. 373; State v. Woodruff, 68 N. J. Law, 89, 52 A. 294; Commonwealth v. Wells, 110 Pa. 463, 1 A. 310; Ledgerwood v. Pitts, 122 Tenn. 570, 125 S. W. 1036."

Hence, holding plaintiff's petition fails to show he has been deprived of any right guaranteed him under the Constitution, statutes, and laws of the United States, or facts showing cause of action of which the United States Court has jurisdiction, defendants' motion to dismiss is hereby sustained, and the case dismissed, at plaintiff's costs.