## NIXON *v.* HERNDON ET AL.

ERROR TO THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS.

No. 117. Argued January 4, 1927.—Decided March 7, 1927.

1. An action for damages may be maintained against judges of election for unlawfully denying to a qualified voter the right to vote at a state primary election. P. 540.
2. A state statute (Texas, 1923, Art. 3093–a) barring negroes from participation in Democratic party primary elections held in the State for the nomination of candidates for senator and representatives in Congress, and state and other offices, violates the Fourteenth Amendment. P. 540.

Reversed.

ERROR to a judgment of the District Court which dismissed an action for damages brought by a negro against judges of election in Texas, based on their refusal to permit the plaintiff to vote at a primary election.

*Messrs. Fred C. Knollenberg* and *A. B. Spingarn*, with whom *Messrs. Louis Marshall, Moorfield Storey, James A. Cobb,* and *Robert J. Channell* were on the briefs, for Nixon.

The primary was a public election under the Constitution and laws of the State. Section 8 of Art. 5 of that Constitution provides that the District Court shall have original jurisdiction of contested elections. This provision has been held by the courts of Texas to confer upon the District Court jurisdiction over contested primary elections. *Ashford* v. *Goodwin,* 103 Tex. 491; *Hammond* v. *Ashe,* 103 Tex. 503, *Anderson* v. *Ashe,* 62 Tex. Civ. App. 262; *Waples* v. *Marrast,* 108 Tex. 5, and in *Koy* v. *Schneider,* 110 Tex. 369.

Casting a ballot in a primary election established and regulated by state law is an act of voting within the meaning of the Fifteenth Amendment to the federal Con-

stitution, and the immunity against discrimination on account of race or color which is guaranteed by said Amendment protects the plaintiff in his right to vote in such primary, where the only obstacle interposed is that he is a negro. Rev. Stats. §§ 1978, 2004; *Guinn* v. *United States,* 238 U. S. 347; *Myers* v. *Anderson, id.* 367; *Anderson* v. *Myers,* 182 Fed. 223; *United States* v. *Reese,* 92 U. S. 214; *Strauder* v. *West Virginia,* 100 U. S. 303; *Ex parte Siebold, id.* 371; *Ex parte Yarbrough,* 110 U. S. 651; *Love* v. *Griffith,* 266 U. S. 32.

When the negro, by virtue of the Fifteenth Amendment, acquired immunity from discrimination in voting on account of his race and color, he thereby acquired the right and privilege as a free man to exercise, to the same extent as a white man, his untrammeled choice in the selection of parties or candidates; and when the legislature of a State, solely because of his race and color, undertakes by law to exclude him from any party, or deny him the same latitude in registering his preference as a member of any party of his choice that it allows to white members of such party, it thereby abridges his right to vote under the Amendment, and denies to him the equal protection of the law guaranteed by the Fourteenth Amendment. *United States* v. *Reese,* 92 U. S. 214; *United States* v. *Cruikshank, id.* 542; *Ex parte Virginia,* 100 U. S. 339; *Strauder* v. *West Virginia, id.* 303; *Ex parte Yarbrough,* 110 U. S. 651; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *McPherson* v. *Blacker,* 146 U. S. 1; *G. C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Connolly* v. *United Pipe Co.,* 184 U. S. 558.

No appearance for defendants in error.

*Messrs. Claude Pollard,* Attorney General of Texas, and *D. A. Simmons,* First Assistant Attorney General, filed a brief for the State of Texas, by special leave of Court.

The nominating primary of a political party is not an election in which everyone may vote.

There are many organized groups of persons, voluntary in character, in the several States of the Union. In many of these the election of officers and the purposes and objects of the organization depend upon the votes of the individual members. Some of these are maintained for charitable purposes, some for the support of religious worship, some for the diffusion of knowledge and the extension of education, some for the promotion of peace, and some for the advancement of political ideas. It clearly appears, therefore, that the right to vote referred to in constitutions, and elections mentioned therein, do not include within their scope all elections and all voting by persons in the United States. The act of the legislature of Texas and the nominating primary in which the vote of plaintiff in error was refused, dealt only with voting within a designated political party, which is but the instrumentality of a group of individuals for the furtherance of their own political ideas.

It must be remembered that " nominating primaries " were unknown at the time of the adoption of the Constitution of the United States and of the Constitution of Texas in 1876. The nominating primary, like its predecessors, the nominating convention and the caucus, is not the " election." Nomination is distinct from election and has been so differentiated from the beginning of our government.

The question of parties and their regulation is a political one rather than legal. The District Court of the United States has no jurisdiction in a case of this character. Political questions are not within its province. *Chandler* v. *Neff*, 298 Fed. 515; 12 C. J. 878.

Because the Democratic party holds a nominating primary, can it be contended that outsiders can be forced upon the party over its expressed dissent? If the party should abandon the primary and go back to the conven-

tion or the caucus system, could it be consistently maintained that the courts could force upon the convention or upon the caucus, the plaintiff in error, if the membership of the party, the convention or the caucus were restricted against negroes?  We contend that a nominating primary is purely a political matter and outsiders denied participation by the party councils cannot demand a redress at the hands of the courts.  *Waples* v. *Marrast*, 108 Tex. 11.  Distinguishing, *Love* v. *Griffith*, 266 U. S. 32.

*Chandler* v. *Neff*, 298 Fed. 515, disposed of a case almost identical with this one, and holds with the Supreme Court of Texas that a primary of a political party is not an election, and the right of a citizen to vote therein is not within the protection of the Fourteenth and Fifteenth Amendments to the Constitution of the United States. Nor is this doctrine limited to Texas.  *Riter* v. *Douglass*, 32 Nev. 400; *Gulden* v. *Johnson*, 87 Minn. 223; *Webber* v. *Felton*, 77 Oh. St. 554; *Baer* v. *Gore*, 79 W. Va. 50; *Dooley* v. *Jackson*, 104 Mo. App. 21; *Morrow* v. *Wipf*, 22 S. D. 146; *Montgomery* v. *Chelf*, 118 Ky. 766; *State* v. *Michel*, 121 La. 374; *Socialist Party* v. *Uhl*, 155 Cal. 776; *People* v. *Democratic Committee*, 164 N. Y. 335; *Newberry* v. *United States*, 256 U. S. 232.

Mr. Justice Holmes delivered the opinion of the Court.

This is an action against the Judges of Elections for refusing to permit the plaintiff to vote at a primary election in Texas.  It lays the damages at five thousand dollars.  The petition alleges that the plaintiff is a negro, a citizen of the United States and of Texas and a resident of El Paso, and in every way qualified to vote, as set forth in detail, except that the statute to be mentioned interferes with his right; that on July 26, 1924, a primary election was held at El Paso for the nomination of candidates for a senator and representatives in Congress and State and other offices, upon the Democratic ticket; that

the plaintiff, being a member of the Democratic party, sought to vote but was denied the right by defendants; that the denial was based upon a Statute of Texas enacted in May, 1923, and designated Article 3093a, by the words of which " in no event shall a negro be eligible to participate in a Democratic party primary election held in the State of Texas," &c., and that this statute is contrary to the Fourteenth and Fifteenth Amendments to the Constitution of the United States.   The defendants moved to dismiss upon the ground that the subject matter of the suit was political and not within the jurisdiction of the Court and that no violation of the Amendments was shown.   The suit was dismissed and a writ of error was taken directly to this Court.   Here no argument was made on behalf of the defendants but a brief was allowed to be filed by the Attorney General of the State.

The objection that the subject matter of the suit is political is little more than a play upon words.   Of course the petition concerns political action but it alleges and seeks to recover for private damage.   That private damage may be caused by such political action and may be recovered for in a suit at law hardly has been doubted for over two hundred years, since *Ashby* v. *White*, 2 Ld. Raym. 938, 3 *id*. 320, and has been recognized by this Court.   *Wiley* v. *Sinkler*, 179 U. S. 58, 64, 65.   *Giles* v. *Harris*, 189 U. S. 475, 485.   See also Judicial Code, § 24 (11), (12), (14).   Act of March 3, 1911, c. 231; 36 Stat. 1087, 1092.   If the defendants' conduct was a wrong to the plaintiff the same reasons that allow a recovery for denying the plaintiff a vote at a final election allow it for denying a vote at the primary election that may determine the final result.

The important question is whether the statute can be sustained.   But although we state it as a question the answer does not seem to us open to a doubt.   We find it unnecessary to consider the Fifteenth Amendment, be-

cause it seems to us hard to .imagine a more direct and obvious infringement of the Fourteenth. That Amendment, while it applies to all, was passed, as we know, with a special intent to protect the blacks from. discrimination against them. *Slaughter House Cases,* 16 Wall. 36. *Strauder* v. *West Virginia,* 100 U. S. 303. That Amendment " not only gave citizenship and the privileges of citizenship to persons of color, but it denied to any State the power to withhold from them the equal protection of the laws. . . . What is this but declaring that the law in the States shall be the same for the black as for the white; that all persons, whether colored or white, shall stand equal before the laws of the States, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by law because of their color? " Quoted from the last case in *Buchanan* v. *Warley,* 245 U. S. 60, 77. See *Yick Wo* v. *Hopkins,* 118 U. S. 356, 374. The statute of Texas in the teeth of the prohibitions referred to assumes to forbid negroes to take part in a primary election the importance of which we have indicated, discriminating against them by the distinction of color alone. States may do a good deal of classifying that it is difficult to believe rational, but there are limits; and it is too clear for extended argument that color cannot be made the basis of a statutory classification affecting the right set up in this case

> *Judgment reversed.*